LYONS, Justice.
 

 Lucky Jacks Entertainment Center, LLC (“Lucky Jacks Entertainment”), and New Gaming Systems, Inc. (“NGS”), appeal from a judgment awarding approximately $216,000 in damages to Jopat Building Corporation, Pajia Realty Corporation, Natural Bridge Development Corporation, and Birges Land Corporation (hereinafter referred to collectively as “Jo-pat”). We reverse and remand.
 

 Factual Background and Procedural History
 

 Jopat owns and manages a shopping center in Roebuck. NGS operates gaming businesses in several states. Beginning in April 2006, NGS negotiated an agreement to lease from Jopat part of the shopping center. On June 7, 2006, Lucky Jacks Entertainment, an independent company owned by an NGS employee, executed the lease agreement as lessee. By separate agreement with Jopat, NGS guaranteed the lease on behalf of Lucky Jacks Entertainment. The lease agreement provided: “The Premises shall be used and occupied for the purpose of operating a video sweepstakes center
 
 and for no other purpose
 
 without the prior written consent of Lessor.” (Emphasis added.) Lucky Jacks Entertainment was formed specifically to operate the video-sweepstakes center in the leased premises pursuant to the lease; it did not engage in any other business in Alabama.
 

 It is undisputed that, at the time the lease agreement was negotiated and
 
 *567
 
 signed, the parties were aware that litigation was pending in the Jefferson Circuit Court regarding the legality of video-sweepstakes operations such as the one required by the lease. It is also undisputed that the parties “hoped” that this Court would eventually determine that such operations were legal.
 

 The lease agreement included a termination provision, which provided: “Lessee may terminate the Lease at any time after twelve (12) full months of paying rent, provided Lessee gives Lessor ninety (90) days advance written notice and paid a sum equal to four (4) months of the then monthly rent with the termination notice.” Jopat’s agent, Matt Renner, testified that the termination provision was inserted into the lease agreement at NGS’s request because NGS knew that the required use— for a video-sweepstakes center- — could be declared illegal. The owner of Lucky Jacks Entertainment, Nathan Freels, testified that the termination provision was inserted into the lease agreement so that Lucky Jacks Entertainment could terminate the lease if the video-sweepstakes operation was not profitable.
 

 Pursuant to the lease agreement as ultimately amended, Lucky Jacks Entertainment began operating a video-sweepstakes center on the property in September 2006. Lucky Jacks Entertainment paid rent as required by the lease agreement for each month it occupied the premises, including December 2006. On December 1, 2006, this Court determined that video-sweepstakes operations were unlawful under § 13A-12-27, Ala. Code 1975.
 
 [1]
 
 See
 
 Barber v. Jefferson County Racing Ass’n,
 
 960 So.2d 599 (Ala.2006). It is undisputed that Lucky Jacks Entertainment vacated the premises and did not pay rent after December 2006.
 

 On January 3, 2007, through counsel, Lucky Jacks Entertainment wrote Jopat’s agent noting this Court’s decision in
 
 Barber;
 
 in that letter, counsel mistakenly presumed that the lease term expired on January 4, 2007. In that same letter, Lucky Jacks Entertainment proposed to extend the lease on a month-to-month basis until this Court’s decision became “final.” In response, Renner wrote Lucky Jacks Entertainment explaining that the expiration date of the lease was September 30, 2009; demanding that Lucky Jacks Entertainment pay the rent owed for January 2007 within five days or be in default of the lease agreement; and offering to help Lucky Jacks Entertainment sublet or assign the lease if it wished to vacate the premises before the expiration date. The record does not show that Lucky Jacks Entertainment requested permission to use the premises for another purpose or that it responded to Jopat’s demand for payment of rent.
 

 On March 23, 2007, Jopat sued Lucky Jacks Entertainment and NGS, as guarantor (hereinafter referred to collectively as “Lucky Jacks”), in the Jefferson Circuit Court seeking damages for breach of the lease agreement and recovery under the guaranty agreement. Jopat later amended the complaint to state a claim for attorney fees and to demand $82,000 in dam
 
 *568
 
 ages on the breach-of-lease claim. Lucky Jacks answered both the complaint and the amended complaint.
 

 At a bench trial, Jopat argued that Lucky Jacks Entertainment had breached the lease agreement by failing to comply with the termination provision in the agreement when it vacated the premises and ceased paying rent. Lucky Jacks argued that the lease was illegal and that it was, therefore, void and unenforceable in its entirety — including the termination provision. Specifically, citing this Court’s decision in
 
 Walker v. Southern Trucking Corp.,
 
 283 Ala. 551, 219 So.2d 379 (1969), Lucky Jacks contended that Lucky Jacks Entertainment was relieved of its duty to perform because the single use for the leased premises required by the lease agreement — a video-sweepstakes operation — had been determined to be unlawful. Jopat argued that this Court’s decision in
 
 Barber
 
 rendered the lease agreement merely impossible to perform, not void, and that, therefore, Lucky Jacks Entertainment was required to comply with the termination provision if it desired to terminate the lease.
 
 [2]
 

 On May 13, 2008, the trial court entered a judgment detailing its findings of fact and conclusions of law. Based on the Court of Civil Appeals’ decision in
 
 Lucas v. Lyle,
 
 807 So.2d 546 (2001), the trial court concluded that the lease was voidable, and it awarded Jopat approximately $216,000 in damages, the amount Lucky Jacks Entertainment would have had to pay if the lease agreement had been terminated pursuant to the termination provision. Lucky Jacks moved to alter, amend, or vacate the judgment pursuant to Rule 59, Ala. R. Civ. P. The trial court denied Lucky Jacks’s motion on July 24, 2008. Lucky Jacks appealed.
 

 Standard of Review
 

 “In reviewing a trial court’s findings of fact based on ore tenus evidence, this Court presumes those findings to be correct.”
 
 Hensley v. Poole,
 
 910 So.2d 96, 100 (Ala.2005). “Nevertheless, this principle is not applicable where the evidence is undisputed, or where the material facts are established by the undisputed evidence.”
 
 Salter v. Hamiter,
 
 887 So.2d 230, 234 (Ala.2004); see also
 
 Kershaw v. Kershaw,
 
 848 So.2d 942, 949 (Ala.2002). Fur thermore, “on appeal, the ruling on a question of law carries no presumption of correctness, and this Court’s review is de novo.”
 
 Ex parte Graham,
 
 702 So.2d 1215, 1221 (Ala.1997).
 

 Analysis
 

 On appeal, Lucky Jacks contends that the trial court erred in concluding that the lease agreement was voidable and not illegal and void. As it did before the trial court, Lucky Jacks bases its argument on this Court’s decision in
 
 Walker,
 
 supra. In
 
 Walker,
 
 the parties entered into a lease agreement by which the lessees were to use the leased premises to operate an office, warehouse, and trucking terminal “ ‘and for no other different object or purpose.’ ” 283 Ala. at 552, 219 So.2d at 380. At the time the lease was executed, the parties did not know that the required use was prohibited by local zoning laws. Upon discovering the restriction, the parties unsuccessfully attempted to have the property rezoned. The lessees then vaeat-
 
 *569
 
 ed the premises, and the lessor sued for uncollected rent.
 

 After noting that “the entire property was rendered useless because of the lease’s terms and the zoning of the property,” this Court explained:
 

 “The general rule in a case such as we have here is stated most clearly in 32 Am.Jur., Landlord & Tenant, § 229, p. 212:
 

 ..Where, however, the lease permits the lessee to use the premises for only a single purpose, a prohibition of law against such use will, according to the weight of authority, annul or terminate the contract and relieve the tenant of obligation thereunder....’”
 

 283 Ala. at 553, 219 So.2d at 381. This Court in
 
 Walker
 
 went on to quote
 
 Wilson v. MeKleroy,
 
 206 Ala. 342, 89 So. 584 (1921), overruled on other grounds by
 
 Cross v. Rudder,
 
 380 So.2d 766 (Ala.1979), which involved the improper sale of the property of a minor. This Court stated:
 

 “ ‘When both parties, acting under a mistake of law, make a contract which the law forbids, then the principals are not liable thereunder .... It is a mistake of law, known in law, yet probably unknown in fact, to the parties to the contract at the time of its execution.’”
 

 283 Ala. at 553-54, 219 So.2d at 381 (quoting
 
 Wilson,
 
 206 Ala. at 348, 89 So. at 588-89). Based on these rules, this Court in
 
 Walker
 
 affirmed the trial court’s judgment for the defendant, concluding that the plaintiff was not entitled to recover on the lease agreement.
 

 Consistent with the rules stated in
 
 Walker
 
 and
 
 Wilson,
 
 this Court has also explained: “We believe that it is a sound principle that when premises are leased for the
 
 express
 
 purpose of enabling the lessee to accomplish an unlawful purpose, the agreement is void and there can be no recovery at the suit of either party against the other.”
 
 Ex parte Rice,
 
 258 Ala. 132, 136, 61 So.2d 7, 9 (1952).
 
 [3]
 
 In
 
 Rice,
 
 this Court determined that this rule was a valid defense to an action seeking the specific performance of a lease agreement that allegedly furthered an unlawful restraint of trade. Under the facts presented, however, this Court concluded that the defendant had not sufficiently pleaded the defense.
 

 In this case, it is undisputed that the lease agreement between Jopat and Lucky Jacks Entertainment required that the premises be used for the operation of a video-sweepstakes center. It is also undisputed that in
 
 Barber,
 
 supra, this Court determined that such operations were unlawful under § 13A-12-27, Ala.Code 1975, a statute enacted before the execution of the lease and never construed in light of the facts applicable to the operations of Lucky Jacks Entertainment. At the time the parties executed the lease agreement, this Court had not yet decided the question whether video-sweepstakes operations were unlawful under § 13A-12-27. However, this Court long ago explained that such circumstance — the resolution of a question of first impression as to the meaning of a statute — does not excuse the parties from compliance with the statute so as to render void contracts enforceable. In
 
 Prince v. Prince,
 
 67 Ala. 565 (1880),
 
 *570
 
 under the circumstances presented, this Court determined that a mortgage was void as violating constitutional and statutory provisions prohibiting the encumbrance of a wife’s property for the debt of her husband. The parties contended that, “at the time this compromise was effected, this court had not announced its conclusion holding such mortgages to be void, and that it presented a grave matter of doubt among members of the legal profession.” 67 Ala. at 569. This Court explained:
 

 “The facts, however, were undisputed, and the only doubt was as to the law. The statutes on this subject were then as fully promulgated as now. Every one was required to know their proper construction, and neither ignorance nor doubt was any excuse. — Ignorantia facti excusat; ignorantia juris non excusat.”
 

 Similarly, here, the facts were undisputed, the only doubt was as to the law. Section 13A-12-27 was in force when Jopat and Lucky Jacks Entertainment executed the lease agreement, and they were required to know its proper construction. More recently, in
 
 Griffin v. Unocal Corp.,
 
 990 So.2d 291, 313 (Ala.2008), in what could be viewed as a relaxation of this standard, this Court quoted the plurality opinion in
 
 McCullar v. Universal Underwriters Life Insurance Co.,
 
 687 So.2d 156, 165 (Ala. 1996), which, in turn, quoted
 
 Chevron Oil Co. v. Huson,
 
 404 U.S. 97, 106-07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In
 
 Huson,
 
 the United States Supreme Court reaffirmed principles establishing the eligibility for nonretroactivity of a decision by referring to whether the decision establishes “a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.” 404 U.S. at 106-07, 92 S.Ct. 349 (citations omitted). We do not view the decision in
 
 Barber
 
 as establishing a new principle of law, justifying nonre-troactivity. Accordingly, the premises leased by Lucky Jacks Entertainment were “leased for the express purpose of enabling the lessee to accomplish an unlawful purpose,” and the lease agreement was void and unenforceable from its inception based on the then existing statutory law of this state. See
 
 Rice,
 
 supra.
 
 [4]
 

 On appeal, Jopat relies on
 
 Lucas v. Lyle,
 
 807 So.2d 546, 548-49 (Ala.Civ.App.2001), the case relied on by the trial court. In
 
 Lucas,
 
 the lease agreement required that the premises be used as a hairstyling salon, a use prohibited by local zoning laws. The evidence did not disclose the lessor’s knowledge, but showed that the lessee mistakenly believed that the use was legal. The lessee had the property rezoned and occupied the premises as a hamstyling salon. Some time later, the parties canceled the lease and executed a release discharging each other from liability.
 

 The lessee later sued the lessor, alleging a breach of the covenant of quiet enjoyment and seeking damages for rent paid before the property was rezoned. Based on
 
 Walker,
 
 the lessee argued that the release of liability did not apply because, the
 
 *571
 
 lessee argued, the lease was void while the use of the premises as a hairstyling salon was prohibited. The trial court entered a summary judgment for the lessor. The Court of Civil Appeals affirmed the judgment. That court’s opinion distinguished
 
 Walker,
 
 stating that, unlike
 
 Walker,
 
 in
 
 Lucas
 
 there was no evidence indicating that both parties were mistaken as to the legality of the lease agreement. Furthermore, based on general contract law regarding the effect of a mutual mistake of the parties, the opinion concluded: “the holding of
 
 Walker
 
 is that the lease was voidable at the option of the lessee.” 807 So.2d at 549.
 

 Based on the construction of
 
 Walker
 
 stated in
 
 Lucas,
 
 Jopat contends that the lease agreement was voidable, not void, and that, as a result, Lucky Jacks Entertainment was required to comply with the termination provision. However, the decision of the Court of Civil Appeals in
 
 Lucas
 
 is not binding on this Court. Furthermore, in plain language this Court’s decision in
 
 Walker
 
 states:
 

 “ ‘Where, however, the lease permits the tenant to use the premises for only a single purpose, a prohibition against that use will ... annul or terminate the contract and relieve the tenant of obligation thereunder.’ ”
 

 283 Ala. at 553, 219 So.2d at 381 (quoting 32 Am.Jur.
 
 Landlord & Tenant
 
 § 229), and
 

 “ ‘When both parties, acting under a mistake of law, make a contract which the law forbids, then the principals are not liable thereunder .... It is a mistake of law, known in law, yet probably unknown in fact, to the parties to the contract at the time of its execution.’”
 

 283 Ala. at 553-54, 219 So.2d at 381 (quoting
 
 Wilson,
 
 206 Ala. at 348, 89 So. at 588-89). Based on this language, which is consistent with other decisions of this Court, e.g.,
 
 Rice,
 
 supra, we reject the Court of Civil Appeals’ construction of
 
 Walker
 
 in
 
 Lucas.
 
 As this Court stated in
 
 Rice,
 
 supra: “We believe that it is a sound principle that when premises are leased for the
 
 express
 
 purpose of enabling the lessee to accomplish an unlawful purpose, the agreement is void and there can be no recovery at the suit of either party against the other.”
 
 Rice,
 
 258 Ala. at 136, 61 So.2d at 9.
 
 [5]
 

 Accordingly, the lease agreement between Lucky Jacks Entertainment and Jo-pat is void in its entirety, including the termination provision. As a result, the trial court erred in entering a judgment for Jopat holding that Lucky Jacks Entertainment should have complied with that provision in terminating the lease and awarding damages to Jopat based on that provision. We, therefore, reverse the trial court’s judgment and remand the cause for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 
 *572
 
 COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
 

 MURDOCK, J., concurs in the result.
 

 [1]
 

 . Section 13A-12-27 provides, in part:
 

 "(a) A person commits the crime of possession of a gambling device if with knowledge of the character thereof he manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of:
 

 'll) A slot machine; or
 

 “(2) Any other gambling device, with the intention that it be used in the advancement of unlawful gambling activity.”
 

 [2]
 

 . Jopat’s argument that the lease agreement was impossible to perform is inconsistent with its argument before the trial court that Lucky Jacks Entertainment could have obtained an alternate use of the premises under that portion of the limited-use provision prohibiting other uses "without the prior written consent of Lessor.” Therefore, we will consider the issues presented to us without regard to the effect, if any, of that language.
 

 [3]
 

 . Cf.
 
 Thompson
 
 v.
 
 Wiik, Reimer & Sweet,
 
 391 So.2d 1016, 1020 (Ala.1980) (“As a general principle, a party may not enforce a void or illegal contract either at law or in equity.”);
 
 Bankers & Shippers Ins. Co. of New York v. Blackwell,
 
 255 Ala. 360, 366, 51 So.2d 498, 502 (1951) (" ‘[Cjontracts specially prohibited by law, or the enforcement of which violated a law, or the making of which violated the law ... [arel void and nonenforceable ... (and) Whenever a party requires the aid of an illegal transaction to support his case, he cannot recover.’ "(quoting
 
 Ellis v. Batson,
 
 177 Ala. 313, 318, 58 So. 193, 194 (1912))).
 

 [4]
 

 . Before the trial court, Lucky Jacks's counsel stated that the lease agreement “subsequently became illegal” after the agreement was signed. However, Jopat does not argue that Lucky Jacks is precluded by its statement from asserting otherwise on appeal, as it has in fact done by arguing illegality from inception. Moreover, Lucky Jacks is not estopped from taking a different view on appeal because it did not obtain a favorable ruling in the trial court. See
 
 Ex parte First Alabama Bank,
 
 883 So.2d 1236, 1244-45 (Ala.2003) (embracing the elements of judicial estoppel as stated in
 
 New Hampshire v. Maine,
 
 532 U.S. 742, 750-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), including “(2) the party must have been successful in the prior proceeding ... ”). Jopat, in fact, correctly argued to the trial court that this Court in
 
 Barber
 
 did not “declare any new rule of law.”
 

 [5]
 

 . Jopat also argues that, at the time Jopat and Lucky Jacks Entertainment entered into the lease agreement, the parties knew that this Court could determine that video-sweepstakes operations were unlawful and that they, therefore, agreed to allocate the risk of such an outcome as stated in the lease agreement. However, because the purpose to be accomplished by the lease agreement is illegal, the entire lease agreement is void, and we cannot honor a provision in that agreement attempting to allocate risks stemming from the illegal conduct. In the trial court, Jopat also relied on a force majeure provision in the lease agreement, but the trial court did not rely on that provision in its judgment. Although Jo-pat refers to the provision in its summary of the argument before this Court, on the same reasoning, i.e., the invalidity of the entire lease agreement, we decline to reach the issue of its applicability.